UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALIYA THERESA JULIATE DAVIS a/k/a/ "Theresa Sutherland" | Crim. No. 3:16-cr-0222 (JBA)<br><br>April 6, 2023 |

**ORDER GRANTING MOTION TO DISMISS**

Defendant Aliyah Theresa Juliate Davis moves to dismiss the petition charging her with violation of her supervised release because a warrant or summons failed to issue before her supervised release term ended on March 5, 2023, meaning the Court lacks jurisdiction over the violation petition under 18 U.S.C. § 3583(i). [Doc. # 77]. The Government opposes, arguing that the Court's docketed notice of the hearing [Doc. # 67] served as a summons that extended its jurisdiction to adjudicate the alleged violation. [Doc. # 78]. For the reasons stated below, the Defendant's motion is GRANTED.

**I.     Background**

Defendant pled guilty to wire fraud, passport fraud, making a false statement, and aggravated identity theft on December 12, 2016. (Gov't's Opp'n to Def.'s Mot to Dismiss [Doc. # 78] at 1.) Defendant's term of supervised release began on March 6, 2020, and was set to terminate on March 5, 2023. (*Id.* at 2.) The Probation Office submitted a petition for the Court to issue a summons requiring Davis to appear for a violation hearing, and on March 2, 2023, the Court signed the petition and ordered that a summons be issued for a violation hearing to be held on March 6, 2023 at 1pm in Courtroom 2. (*Id.*) The signed petition was entered on the docket on March 3, 2023, along with a calendar docket entry that read: "NOTICE OF E-FILED CALENDAR as to Teresa Sutherland/Aliyah Davis. THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Supervised Release Violation and Show Cause

1

Hearing will be held 3/6/23 at 1:00 p.m. in Courtroom Two, 141 Church St., New Haven, CT." [Doc. # 67.]

That same day, Defendant's counsel contacted the Court, Probation, and the Government via email asking if the hearing could be rescheduled so that Defendant's new counsel could appear, but also stating that "if the Court's preference is to keep this supervised release hearing scheduled for 1 PM on Monday, I will make sure either I or someone else in my office is present and prepared to handle it." (*Id.*) The Court's courtroom deputy sent a follow-up email proposing March 9, and the date was confirmed with counsel for both sides and Probation. (*Id.*) A docket entry appeared that day resetting the hearing. (*Id.*) A summons was issued on March 8, 2023 for the defendant to appear at the March 9, 2023 hearing. (*Id.*) The hearing was continued until March 24, 2023, and Defendant filed her motion to dismiss on March 16, 2023; oral argument on the motion was held on March 24, 2023.

## II.   Discussion

### A.   Second Circuit Jurisprudence on 18 U.S.C. § 3583(i)

The Court's jurisdiction is governed by 18 U.S.C. § 3583(i), which states that "[t]he power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation*." (emphasis added.)

Before addressing the merits of the parties' arguments, some background on 18 U.S.C. § 3583(i) is appropriate. Prior to the enactment of the statute, district courts "took different approaches to balancing the interests of former releasees in repose and those of the government in punishing timely-detected late-term violations," and generally "identified either the filing of a petition for revocation with the court or the provision of notice to a

releasee that the government would seek to revoke the term of release as the event that would trigger an extension of jurisdiction." *United States v. Janvier*, 599 F.3d 264 (2d Cir. 2010). Congress resolved the uncertainty surrounding the question with the enactment of 18 U.S.C. § 3583(i) in 1994. The Second Circuit in *Janvier*, 599 F.3d 264, found that Congress' choice to make the issuance of a warrant or summons the triggering event for the extension of jurisdiction should be interpreted as a "rejection" of the idea that any other triggering event would suffice, making the issuance of a warrant or summons the "exclusive" means of extending the court's jurisdiction over probation violations. *Id.* at 268.

The question had come before the Second Circuit based on a petition filed in the district court alleging violations of the defendant's supervised release that was submitted on July 21, 2008; the term of his supervised release ended the next day, on July 22, 2008. *Id.* at 269. The district court "checked the box" on the form accompanying the petition ordering the issuance of a warrant, and signed it, on July 21, 2008; however, the warrant did not issue until July 23, 2008. *Id. Janvier* held that "[b]ecause no warrant issued here during the term of supervised release, under the plain terms of the governing statute the district court lacked power to revoke the supervised release term after its expiration based on [defendant's] last-minute violation of the conditions of his release." *Id.* While the Second Circuit acknowledged that from "a policy standpoint, it might well make more sense to trigger the retention of jurisdiction by the action of a judicial officer . . . directing that a warrant issue, rather than by the purely ministerial action of the clerk of the court in actually issuing the warrant, which follows inevitably from the court's action," *id.* at 268, it explained that to take that position "would be to rewrite the statute to say something that it does not say," because the plain language of the statute required that a warrant or summons to be "issued" in order to extend jurisdiction, thus "clearly referencing the issuance of a warrant as an action that has been *perfected*." *Id.* (emphasis added.)

3

Although *Janvier* appeared to establish a bright-line rule, a unanimous panel of the Second Circuit subsequently added a new dimension to the analysis with the issuance of its summary order in *United States v. Bunn*, 542 F. App'x 50, 53 (2d Cir. 2013). There, the district court had issued an order on April 6, 2012, for a supervised release violation hearing on April 9, 2012; the defendant's term of supervision was set to expire on May 10, 2012. *Id.* at 52. Although no formal summons was issued, the district court issued an order which was based on detailed allegations of a violation of supervision, "signed by Judge Barbara Jones," ordering "[t]he issuance of a summons," and stating that "Bunn is directed to appear" on "April 9, 2012," at "2:30" in "Courtroom 17C" of the United States District Court for the Southern District of New York. *Id.* The panel held that "[f]rom these facts, as well as the relevant law specifying minimal requirements for the issuance of a summons to answer supervised release violation charges, we easily conclude that a summons was issued[.]" *Bunn* distinguished itself from *Janvier* by explaining that there, "no supplemental information was added" to the form on which the box was checked ordering the issuance of a warrant "that allowed it to be construed as a warrant, in sharp contrast to this case where it was the additional information that effectively transformed the form into a summons." *Id.*

**B.  Application of 18 U.S.C. § 3583(i)**

Defendant argues that because no formal summons issued until March 8, and her supervised release term expired on March 5, the Court has no jurisdiction to adjudicate her alleged violations because the order directing the issuance of a summons was insufficient to preserve jurisdiction based on *Janvier*. (Def.'s Mot. to Dismiss. [Doc. # 77] at 1.) The Government disagrees, and argues that the order meets the requirements set forth in *Bunn*. What those requirements might be, however, is less than clear. Relying on *Black's Law Dictionary,* 1450 (7th ed. 1999), *Bunn* found that a "summons" is "generally understood to be the process for requiring a defendant to appear and answer in an action." *Bunn,* 542 Fed. App'x at 51. Beyond that, however, the summary order provided little guidance on what the

necessary indicia of a summons might be; it rejected the idea that a summons needed to meet the requirements of Fed. R. Crim. P. 4(b)(2), which states that a summons must require the defendant to appear before a magistrate judge at a stated time and place, and include the defendant's name, a description of the offense charged, and the judge's signature, but nevertheless made a point of confirming that the district court's order would have met those requirements, and that the order specifically stated "Bunn is directed to appear." *Id.* at 51-52. *Bunn* also relied on the inclusion of "supplemental information" in the district court's order to distinguish it from *Janvier,* but was silent as to which pieces or how much of that information were necessary or sufficient predicates for the issuance of a summons. *Id.* at 52.

In resolving the questions *Bunn* and *Janvier* left open, the Court looks to the Third Circuit's opinion in *United States v. Merlino*, 785 F.3d 79 (3d Cir. 2015)[1] for guidance. When considering whether a district court order "directing the issuance of a summons, taken in combination with notice to [defendant's] counsel," satisfied the statutory requirement that a "summons" be issued, *Merlino* relied heavily on Fed. R. Crim. P. 4(b)(2) for guidance, and also looked to *Black's Law Dictionary* 1665 (10th ed. 2014), which defined summons as a "writ or process commencing the plaintiff's action and requiring the defendant to appear and answer", and *Ballentine's Law Dictionary* 1238 (3d ed. 1969), which defined summons as the "original process upon a proper service of which an action is commenced and the defendant therein named brought within the jurisdiction of the court." *Id.* at 87 (emphasis added). *Merlino* concluded that "a summons traditionally is a document afforded special weight due to its role in the formal initiation of both civil and criminal proceedings," that the legal requirement for the defendant to appear was a critical aspect, and that nothing "other than

---

[1] The Government argues that the "scope and precedential value of *Merlino* is limited" because the panel filed three separate opinions. (Gov't's Opp'n at 8) (citing *United States v. Goldner*, 2022 WL 17861409, Crim No. 15-2 (E.D. Pa. Dec. 22, 2022)). However, as Defendant notes, in *United States v. Lowmaster*, No. 22-1531, 2023 WL 2207593, at *3 (3d Cir. Feb. 24, 2023), the Third Circuit reaffirmed the fact that "functional equivalence" is not enough to satisfy the statute, and the process for extending jurisdiction must be followed "exactly."

5

the *formal* issuance of a warrant or summons can satisfy the mandate of § 3583(i)" because to adopt a "functional equivalence test" would "signal a return to the amorphous jurisdictional practices exemplified by the case law predating § 3583(i)." *Id.* at 87-88 (emphasis added). The formality was key, the court explained, because *Black's Law Dictionary* 960 defined "issue" as "[t]o be put forth *officially*" (emphasis added); thus, even if informally communicating the details of the hearing to counsel provided notice, it did not meet the statutory requirements for issuance of a summons. *Id.*

*Merlino,* to be sure, goes further than *Bunn* and perhaps even than *Janvier*. However, the common thread in *Merlino, Bunn,* and *Janvier* is that all three require, at a minimum, that a court formally and explicitly direct or require that a defendant appear in order for its order to constitute a summons. As Defendant observes, "the absence in this case of an explicit and clear order for the defendant to appear" is exactly what this case lacks. (Def.'s Supp. Mem. [Doc. # 82] at 1.) The Government argues otherwise, maintaining that this case is on "all fours" with *Bunn,* and claiming the Court's order "directed Davis to appear" for a violation hearing, specified the date, time, and place she was to appear, and "Davis' attorney (and therefore Davis)[2]" received notice of the order before the term of supervision had expired, treating the notice as meaning "the Court had ordered Davis to appear." However, the Government's characterization of the order as having "directed" Defendant to appear is not

---

[2] Defendant's counsel maintained at oral argument that notice to Defendant's attorneys was not the same as notice to Defendant, because counsel was not necessarily required to separately notify her, regardless of whether the Federal Defenders' office had a procedure for doing so. There are two problems with this argument. First, regardless of whether the summons had been issued yet, attorneys would be obligated to notify their clients of notices for an upcoming hearing date for the potential revocation of their supervised release before the Court. *See, e.g.*, American Bar Association *Model Rules of Professional Conduct*, Rule 1.4: Communication (requiring a lawyer to "keep the client reasonably informed about the status of the matter.") Second, jurisdiction is extended when the summons is *issued,* not when it is *received;* thus, the question relevant to jurisdiction is whether the Court's order constituted issuance of a summons, not whether Defendant actually received notification.

quite accurate. Although the Court's notice certainly implied an *expectation* that the parties would appear, the words "directed to appear" are nowhere in the docketed notice.

The Government views this as a distinction without a difference and urges the Court to find that no "particular technical language or element" is needed to make the order a summons, but that instead "what matters is the operation and effect of the Court's order". (Gov't's Supp. Mem. [Doc. # 83] at 2.) This position is understandable, given that *Bunn* can be read to endorse a more functionalist approach with its discussion of how there was "no question" the defendant and his attorney understood in that case that a summons had thus been issued, and they "all appear to have treated the court order as a summons," not "simply as a directive for the Clerk of Court to issue a summons." *Bunn,* 542 Fed. App'x at 52. The language in Defendant's counsel's email requesting a continuance reflects the same understanding that if the Court declined to move the date, she was obligated to appear or to ensure a substitute could cover for her.[3] Read in isolation, it would be easy to take this language as suggesting that an order becomes a summons if the parties' treat it as such.

However, the Court reads *Bunn's* discussion of how the parties' reacted to the Court's orders as confirmation that the language "directed to appear" had its intended effect, rather than as an independent factor the panel considered in determining whether the order was a summons. To find otherwise would run directly contrary to *Janvier,* which made clear that even if the effect of the district court's order had been treated as the functional equivalent of a warrant and had resulted in all parties appearing, it would not have transformed the order

---

[3] The Court is also sympathetic to the idea that the summons may well have issued if Defendant's counsel had not requested the continuance. However, the Third Circuit was faced with a similar situation in *Merlino*, where defense counsel asked if it would be possible to wait until the end of the following week to set a date for the hearing, and the deputy clerk testified that "absent counsel's request for a delay, the notice of hearing would have issued on September 2 or 3, before the expiration of supervised release." 785 F.3d at 81-82. That fact did not change the outcome in *Merlino,* nor does it here; regardless of how well intentioned the delay was, the statute is jurisdictional in nature, and does not provide an exception to its requirements even when the delay was for good reason. *See id.* at 85-86.

7

into a "perfected" warrant "by its own terms." 599 F.3d at 268. To the contrary, the idea that a "functional equivalent" lacking the hallmarks of formality or any direct invocation of the court's authority could nevertheless be a warrant was exactly the theory the Second Circuit in *Janvier* rejected, and other courts have done the same. *See United States v. Merlino,* 785 F.3d 79, 88 (3d Cir. 2015); *United States v. Block,* 927 F.3d 978, 983 (7th Cir. 2019) (finding no jurisdiction because the court's "minute orders never directed Block to appear—they merely announced the hearings would take place"); *United States v. Pocklington*, 792 F.3d 1036, 1041 (9th Cir. 2015) (rejecting the government's argument that the "functional equivalent" of a warrant was sufficient to extend the court's jurisdiction when the court's order lacked any of the "indicia" of a warrant").

While "compliance with this condition might sometimes be *pro forma* and practically meaningless (in that the releasee may not need formal notice), [] it is not difficult." *United States v. Block*, 927 F.3d 978, 985 (7th Cir. 2019). As *Bunn* notes, the law specifies "minimal requirements" for the issuance of a summons, 542 F. App'x at 52, and the "ease with which the statute can be satisfied" is all the more reason for courts to be wary of requiring anything less than strict adherence. *Janvier* at 268. *Bunn* might lower the bar for the required formalities, but it did not eliminate it. To extend its jurisdiction, both § 3583(i) and *Bunn* require the Court to do so explicitly; here, the Court did not.

### III. Conclusion

The Court finds that the March 3, 2023 order was not a summons, and that no summons was issued before Defendant's supervised release terminated on March 5, 2023. Defendant's motion to dismiss Probation's petition is GRANTED.

IT IS SO ORDERED.

                                                                               /s/_____

                                                                  Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of April 2023.